## STANCHFIELD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14296.

United States Court of Appeals
Eighth Circuit.

Oct. 11, 1951.

O. A. Brecke, Minneapolis, Minn., for petitioner.

Irving I. Axelrad, Sp. Asst. to Atty. Gen., (Theron Lamar Caudle, Asst. Atty Gen.

1. Memorandum opinion of the trial court. In re Wisconsin Central Railway Co., D.C., 93 F.Supp. 579.

and Ellis N. Slack and Carolyn R. Just, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is a petition to review a decision of the Tax Court denying the validity as between petitioner and his wife of two family partnerships. The taxable year involved is the calendar year 1943.

On February 1, 1943, petitioner, R. A. Stanchfield, and his wife, V. M. Stanchfield, residents of Minnesota, executed a written partnership agreement, valid under the laws of Minnesota, providing that the partnership business should be conducted under the name of Priority Mills, that it should engage in the milling, mixing, and sale of feed, grains, and cereals of all kinds, that the capital of the partnership should be contributed in equal amounts by each of the partners, and that each should own a one-half interest in the business and share equally in the net profits and bear equally any losses sustained in the business. The agreement further provided that the compensation to be paid to either of the partners for services actually rendered in the partnership business should be fixed by the partners from time to time, and that such compensation should be deducted from the gross earnings along with other expenses in determining the net profits or net losses of the firm to be distributed to or borne by the respective partners.

For about ten years prior to the execution of this agreement R. A. Stanchfield had been employed by the A. L. Stanchfield Company, a partnership engaged in the buying and selling of grain and feed ingredients. A. L. Stanchfield was the father of R. A. Stanchfield whose salary for the year 1942 was $5,324.00. Petitioner and his wife resided on a small farm near Minneapolis which they had acquired in February 1942 at a cost of $12,000.00 and which they held as joint tenants. Of the purchase price of this property petitioner and his wife had contributed $5,000 from their savings and petitioner's father had made them

a gift of the balance. Neither petitioner nor his wife owned other property. His wife had never engaged or been employed in business.

Some time in 1942 the A. L. Stanchfield Company had acquired an old mill from the State of Minnesota. This property had been purchased at a low price and remained idle and unused until the organization of the Priority Mills partnership. Petitioner proposed to his father that petitioner and his wife lease this mill and engage in the business of mixing and selling feed. His proposal was accepted. The Priority Mills partnership agreement was executed by petitioner and his wife. The A. L. Stanchfield Company rented the mill to the partnership under an oral agreement for $100 a month subject to future adjustment. Petitioner and his wife borrowed from A. L. Stanchfield Company $10,000 on their note payable on demand and signed by both of them. These funds constituting the capital with which Priority Mills began business were deposited in a bank account in the name of Priority Mills. Both partners were authorized to sign checks on the partnership account. A certificate of trade name was filed with the District Court of the County in Minnesota in which the business was operated on April 16, 1943. On December 15, 1943, a written lease of the mill was executed by the A. L. Stanchfield Company as lessor and Priority Mills as lessees for one year at a rental of $250 a month. This lease was signed by both petitioner and his wife.

Petitioner's wife took no part in the operation of the Priority Mills partnership. The active management of the business was entirely in the hands of petitioner whose salary was fixed at $6,000.

The business met with remarkable success in the year 1943, the net earnings before taxes being $57,572.45. The partners disbursed the income of Priority Mills as follows: Within 60 days after the beginning of business they paid their note to the A. L. Stanchfield Company in the amount of $10,000. They acquired additional farm land for $6,300 as joint tenants, spent $11,000 in improvements upon the property acquired for the purpose of

operating an experimental farm for the testing of their feed products, paid petitioner's agreed salary and insurance, and purchased war bonds.

Petitioner and his wife reported their shares of partnership income for 1943 in accordance with the partnership agreement. The Commissioner determined that the partnership was invalid for income tax purposes and assessed the entire income of the partnership to the petitioner.

In April 1943 A. L. Stanchfield Company purchased the assets of International Sugar Feed Company, a defunct corporation, for the sum of $10,000, and turned these assets over to a newly-formed partnership as the capital contribution of A. L. Stanchfield and E. R. Stanchfield, his wife. On May 19, 1943, petitioner drew a check on Priority Mills for $10,000 payable to the Sugar Feed partnership as a capital contribution on behalf of himself and his wife. This partnership commenced business in May 1943 with five members each contributing $5,000 for a one-fifth interest. At the outset no formal written partnership agreement was executed, but it is undisputed in the record that the interested parties agreed that the Sugar Feed business should be conducted as a general partnership. In February 1944 the interested parties executed a limited partnership agreement. Petitioner's wife performed no services for the Sugar Feed partnership. Petitioner performed only nominal services for which he received the sum of $800 in the year 1943. The Tax Court held that the Sugar Feed partnership was not valid for tax purposes as between petitioner and his wife, and on this holding taxed two-fifths of the income of Sugar Feed to petitioner.

The Tax Court made the following findings of fact:

"The business known as Priority Mills was the sole proprietorship of the petitioner in 1943, and was wholly owned and operated by him. Petitioner's wife did not contribute any capital to the business known as Priority Mills. The petitioner and his wife did not in good faith and acting with a business purpose intend to join together as partners during 1943 in the present conduct of the business known as Priority Mills.

*     *     *     *     *     *

"The petitioner's wife did not contribute, in 1943, $5,000, or any other amount, to the capital of Sugar Feed. * * * The petitioner did not, in good faith and with a business purpose intend to join with his wife in partnership in 1943 for the present conduct of the business known as Sugar Feed. The petitioner contributed $10,000 to the capital of Sugar Feed in 1943."

Whether for Federal income tax purposes a partnership exists depends upon the particular facts in each case. The vital question is whether the partners really intended to join together for the purpose of carrying on the partnership business sharing its profits or losses or both. Their intention in this respect is a question of fact to be determined as any other fact from all the evidence, including the partnership agreement and the conduct of the parties in the execution of its provisions. "If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient." Commissioner v. Culbertson, 337 U.S. 733, 744–745, 69 S.Ct. 1210, 1215, 93 L.Ed. 1659. The Tax Court may consider the facts of capital contribution and services rendered to the claimed partnership upon the question of the intent of the parties, but it may not substitute its judgment for that of the parties. Id., 337 U.S. at page 745, 69 S.Ct. at page 1215, 93 L.Ed. 1659. Greenberger v. Commissioner, 7 Cir., 177 F.2d 990, 994; Nelson v. Commissioner, 8 Cir., 184 F.2d 649; Funai v. Commissioner, 4 Cir., 181 F.2d 890. Its findings of fact while presumptively correct on review by this court are not conclusive. Walsh v. Commissioner, 8 Cir., 170 F.2d 535, 539; Kohl v. Commissioner, 8 Cir., 170 F.2d 531, 534; Durwood v. Commissioner, 8 Cir., 159 F.2d 400, 405.

We are unable to find any basis in the evidence for the Tax Court's find-

ings of fact. This case is sharply distinguished from the great majority of family partnership cases in that the partnership agreements were executed before the partnerships began business operations and at a time when there was no certainty that large profits or any profits would be realized with the consequent important savings of Federal income taxes. In the case of both Priority Mills and Sugar Feed the partnership between the petitioner and his wife follows the pattern of joint ownership and joint responsibility which they had followed since their marriage. When Priority Mills was organized neither the petitioner nor his wife had capital to contribute to the business. They borrowed the capital with which business operations began. Each became liable for the repayment of the loan and one was as much a contributor of capital as the other. No step which gave notice to the world that they were partners in fact and in law was omitted. That the wife contributed no services to the partnership in the operation of Priority Mills is of no importance on the question of intent of the parties. The petitioner was paid a salary in accordance with the terms of the partnership agreement for the management of the business in which he was experienced and in which his wife was not. His salary was charged as an expense in the operation of the business in accordance with the terms of the partnership before the division of profits. In the absence of proof to the contrary, it was for the partners and not for the court to say whether the salary was commensurate with the services actually performed. This arrangement, expressly provided in the partnership agreement, did not preclude the petitioner's wife from being a member of the partnership entitled to share in its profits. That petitioner's wife was not paid currently from the income of the partnership to which she rendered no services merely indicates that the partnership was operated in a business-like manner. Clearly she was entitled to share in the profits of the partnership and equally liable with the petitioner for its losses. Her right to receive the profits as income is determinative for Federal income tax purposes. Funai v. Commissioner, supra, 181 F.2d at pages 894–895.

The Tax Court did not find that the International Sugar Feed Company was not a valid partnership for income tax purposes, but merely concluded without support in the evidence that the petitioner's wife contributed no capital to the partnership and therefore did not intend to share its profits as a partner. This conclusion naturally followed the erroneous finding that petitioner's wife was not a partner in Priority Mills. Since the contrary of this proposition is true, the interest purchased in International Sugar Feed with funds belonging to petitioner's wife became her property and the income derived from it was her income.

The decision of the Tax Court is reversed.