## BRATTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4301.

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1951.

Roger S. Randolph, Tulsa, Okl. (Conner, Winters, Randolph & Ballaine, Tulsa, Okl., on the brief), for petitioner.

Richard D. Harrison, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Carolyn R. Just, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The sole question presented by this petition to review a decision of the Tax Court is whether the wife of the petitioner [1] should be recognized for income

1. The petitioner is hereinafter referred to as taxpayer.

tax purposes as a partner in the firm known as McCormick's Gilt Edge Dairy. The Commissioner found that for tax purposes the wife was not a partner and accordingly determined a deficiency in the income of the taxpayer for the years 1943, 1944 and 1945. The Tax Court affirmed.

The taxpayer graduated from the Oklahoma Agricultural and Mechanical College in 1942 where he majored in dairy manufacturing. Doris Farmer, a graduate of the same college, and the taxpayer were married in 1935. Following his graduation the taxpayer worked for various dairy concerns including the Fairmont Creamery Company for whom he went to work in 1936 and continued until 1941. His work consisted of supervising retail dairy stores and soliciting business throughout the State of Oklahoma. He was required to do considerable traveling and his wife usually accompanied him on trips and assisted him otherwise in his work. Both acquired extensive knowledge of the dairy business. During these years, the two anticipated the time when they together could own a dairy of their own and were continuously looking for that opportunity. In 1941, the owner of McCormick's Gilt Edge Dairy in Norman, Oklahoma, indicated a desire to sell, and the taxpayer entered into negotiations for its purchase. The owner insisted that the sale be made to a corporation and requested a down payment on the purchase price of $25,000. The taxpayer and his wife were completely without funds, and it was necessary that they borrow sufficient money to make the down payment if the purchase was to be consummated. A close friend of the taxpayer's wife agreed to loan the two $10,000 upon their demand note. The lender, knowing the abilities of the wife, would not have made the loan without her signature on the note. With the proceeds of this loan the taxpayer was able to negotiate a satisfactory arrangement for the purchase of the business. A corporation was organized and 100 shares of its common stock were purchased with this $10,000. 98 shares were issued to the taxpayer, 1 share to his wife and 1 share to the lender of the $10,000. The taxpayer acquired another 150 shares by giving his note for $15,000 and pledging the 250 shares to secure its payment. This note was eventually paid from the profits of the business. The $10,000 note was unpaid at the time of the hearing before the Tax Court. The taxpayer and his wife had always considered themselves as joint owners of the stock. It was issued in the taxpayer's name to avoid any complications in the original negotiations, and to prevent from becoming known the facts that the taxpayer was without credit and that the entire amount of the initial payment had been obtained from a friend of the taxpayer's wife and of her family.

On November 30, 1942, in addition to the 250 shares of common stock issued to the taxpayer, C. E. Ash owned 100 shares of preferred stock. It was agreed at that time that a partnership would be organized to operate the business. Such a partnership was created by an agreement in writing which conformed to Oklahoma law. The profits and losses were to be shared by the partnership as follows: the taxpayer and his wife 5/14 each, C. E. Ash and his wife 2/14 each. At the time the taxpayer's wife contributed $1,000 to the partnership, which she borrowed from the corporation on her note.

The evidence in the case is not in dispute. It shows that the taxpayer's wife was a woman of unusual intelligence and ability. She was particularly attractive to people generally and was an accomplished saleswoman. She worked with her husband in the business from the time it was acquired. The partnership was engaged in a business which was extremely competitive. Its success depended upon its ability to purchase raw milk from producers and to sell its products. Through her efforts many of the better accounts were acquired, including that of the Ships Service Stores of the United States Navy at Norman, which accounted for more than one-half of the profits of the partnership for the taxable years in question. She worked continuously with the taxpayer in persuading farmers and other producers of milk to sell to the partnership. Her work often extended into the night when she wrote letters and checked route records. From the creation

of the partnership she was recognized as a partner. She could write checks on the partnership account. All business of the enterprise was transacted as a partnership. When she made withdrawals from the partnership account they were deposited in the joint account with the taxpayer. Both the taxpayer and his wife could and did draw upon this account. She obligated herself on a $40,000 note for the purchase of a farm in the name of the partnership. Disinterested witnesses testified as to the wife's participation in the business and her value to it.

Sections 181 and 182 of the Internal Revenue Code, 26 U.S.C.A. §§ 181, 182, provide that partnerships are not taxable as such for federal income tax, and that the partners shall be taxed as individuals for their distributive shares. Of course these provisions apply only to bona fide partnerships having a genuine business purpose, and transactions between husband and wife which tend to reduce family tax should be carefully scrutinized. Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 289, 66 S.Ct. 532, 90 L.Ed. 670. There is no question, however, that a husband and wife under proper circumstances may become partners for business purposes, including income tax. Commissioner of Internal Revenue v. Tower, supra; Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 737, 69 S.Ct. 1210, 93 L.Ed. 1659. The existence of a partnership within the meaning of the law is a question of fact, and a finding on such fact by the Tax Court may not be disturbed on appeal unless it is clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; Freese v. Jones, 10 Cir., 156 F.2d 454, 456. The Commissioner contends here that there is ample evidence to sustain the finding of the Tax Court, and that there was no bona fide intent to create a partnership between the taxpayer and his wife, citing Commissioner of Internal Revenue v. Culbertson, supra; Commissioner of Internal Revenue v. Tower, supra; Lusthaus v. C. I. R., 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. In the Tower and Lusthaus cases, the Court indicated that the tests to determine whether a partnership existed between members of a family should be the investment of original capital, a substantial contribution to the control and management of the business, or the performance of other vital services. The Court in the Culbertson case said that the tests referred to in the Tower and Lusthaus cases were not conclusive but were to be taken with all other material facts to determine if the parties really intended to join together for the purpose of carrying on the business and sharing the profits and the losses. The significance of the Culbertson case is in its de-emphasis of the so-called tests referred to in the Tower and Lusthaus cases, so that our problem is, after a consideration of all the facts and circumstances in the case, to determine whether the findings of the Tax Court are clearly erroneous.

The evidence shows that this husband and wife entered into this undertaking with nothing more than hope. The wife was able to negotiate a loan from a friend of hers which enabled them to obtain a start upon the fulfillment of that hope. True, the proceeds of this loan were lost for a time in a corporate structure, but the stock was held by the taxpayer for the benefit of both. The remaining obligations for the purchase price were paid from the earnings of the business. It cannot be denied that the wife also contributed vital services to the enterprise. Her skill and business judgment in the conduct of the business were important factors in its success. There was an actual risk sharing in the enterprise and a mutuality of effort between the taxpayer and his wife. As we said in Eckhard v. Commissioner of Internal Revenue, 10 Cir., 182 F.2d 547, 550, "When judged in the light of realities, we think the evidence conclusively establishes a bona fide business partnership." It follows that the Commissioner's deficiency determination should be set aside. See also Graber v. Commissioner, 10 Cir., 171 F.2d 32; Jones v. Baker, 10 Cir., 189 F.2d 842.

The decision of the Tax Court is reversed and remanded.